AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

### FILED

NOV 1 4 2024

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

for the

Northern District of Oklahoma

In the Matter of the Search of
*a black and gold Motorola Razr cellphone; a black*
*Samsung cell phone with IMEI 356424985905092, and a*
*gray Celero 5G cellphone, currently stored at the FBI*
*Tulsa Residence Agency, 8023 East 63rd Place, Tulsa,*
*Oklahoma*

)
)
)
)
)
)

Case No. 24-mj-702-MTS

FILED UNDER SEAL

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | **Knowingly or Intentionally, Manufacturing, Distributing, or Dispensing, or Possessing with Intent to Manufacture, Distribute, or Dispense a Controlled Substance** |
| 18 U.S.C. § 922(g)(1) | **Felon in Possession of a Firearm and Ammunition** |

The application is based on these facts:
**See Affidavit of Koby R. Knodle, Special Agent, FBI, attached hereto**.

☒ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Koby R. Knodle, Special Agent, FBI
*Printed name and title*

Subscribed and sworn to by phone.

Date: 11-14-2024

_____
*Judge's signature*

City and state:  Tulsa, Oklahoma

Mark T. Steele, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of a black and gold Motorola Razr cellphone; a black Samsung cell phone with IMEI 356424985905092, and a gray Celero 5G cellphone, currently stored at the FBI Tulsa Residence Agency, 8023 East 63rd Place, Tulsa, Oklahoma** | Case No. _____ |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Koby R. Knodle, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant authorizing the examination of the following property:

> a. Device 1: a black and gold Motorola Razr cell phone with "You Gotta Believe" on the back of the phone;
>
> b. Device 2: a black Samsung cell phone with IMEI 356424985905092; and
>
> c. Device 3: a gray Celero 5G cell phone,

which are currently in law enforcement possession, and the extractions from that property of electronically stored information described in Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant.

3. I have been a Special Agent with the Federal Bureau of Investigation since July 2022. Prior to being a Special Agent with the Federal Bureau of Investigation, I was a sworn deputy for over seven years in Arizona. During that time, I investigated a myriad of crimes, including drug offenses, drafted and sworn search warrants, and conducted physical searches of property. Currently, I am a Special Agent of the Federal Bureau of Investigation (FBI) assigned to the Oklahoma Safe Trails Task Force based out of Tulsa, OK. As a Special Agent, my duties include investigating violations of federal criminal law. In addition to formalized training, I have received extensive training through my involvement in an array of investigations working alongside experienced law enforcement officers at both the federal and local level. My investigations include, but are not limited to, violent crimes, Indian Country violations, firearms offenses, domestic violence, homicides, and crimes against children.

4. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein. Because this affidavit is submitted for the

2

limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 21 U.S.C. § 841(a)(1) (Knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance) and Title 18 U.S.C. § 922(g)(1) Felon in Possession of a Firearm and Ammunition will be located in the electronically stored information described in Attachment B and is recorded on the devices described in Attachment A.

## Identification of the Device to be Examined

6. The property to be searched are:

    a. Device 1: a black and gold Motorola Razr cell phone with "You Gotta Believe" on the back of the phone (further descriptors cannot be obtained without turning on and searching Device 1);

    b. Device 2: a black Samsung cell phone with IMEI 356424985905092; and

    c. Device 3: a gray Celero 5G cell phone (further descriptors cannot be obtained without turning on and searching Device 3),

hereinafter the "Devices."  The Devices are currently located at FBI Tulsa Resident Agency, 8023 East 63rd Place, Tulsa, Oklahoma.

3

7. The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## Probable Cause

8. On September 26, 2024, the Tulsa Police Department was called to possible shots fired, or domestic violence altercation in progress. One person called 911 and reported observing a male drive a silver Tahoe vehicle through a ditch and onto the sidewalk. Additional 911 callers said they saw the Tahoe parked on the easement. The male, later identified as Antonio Colbert ("Colbert"), was seen by one caller with a firearm. Two other callers witnessed Colbert assaulting a female, later identified as being a victim in this case. The victim is herein after referred to as C.R.

9. The first witness saw C.R. on foot. C.R. appeared to be on a cellular telephone and began yelling. The silver Chevrolet Tahoe bearing Oklahoma license plate J2L78, driven by Colbert, drove over a ditch and appeared to be driving at C.R. The witness believed Colbert was trying to run C.R. over. Colbert emerged from the silver Tahoe, yelling at C.R. Colbert pulled out a handgun from his pants pocket, pointed the firearm at C.R., and fired one round at C.R. After Colbert shot at, but did not strike C.R., Colbert returned to the silver Tahoe.

10. Tulsa Police Department Officers arrived on scene. The silver Tahoe was parked on a sidewalk off the roadway. Responding officers located both Colbert and C.R. Officers detained Colbert. Officers neither found a pistol on Colbert's person,

4

nor observed a pistol in the surrounding area. Colbert spontaneously referred to the vehicle as being his vehicle on multiple occasions. Officers conducted a search of the Tahoe. A Glock 19 pistol was located wedged in between the Tahoe's passenger seat and the center consol. The pistol contained a loaded, extended magazine with live ammunition, and one empty casing that was lodged inside the firearm's chamber. The officer who found the pistol noted it smelled as if it was recently fired.

11.  Inside of the center consol, Officers located two plastic containers. One container with approximately 13.74 grams of marijuana, and a second container with approximately 10.41 grams, 18 multi-colored pills that field tested presumptively positive for fentanyl. The TPD lab tested the pills and showed they were in fact methamphetamine.

12. Officers also found two cell phones on the Tahoe's center console, specifically, a black and gold Motorola Razr cell phone with "You Gotta Believe" on the back of the phone, and a black Samsung cell phone with IMEI 356424985905092. Officers seized the cell phones and controlled substances.

13. Colbert, a registered citizen by blood of the Muscogee (Creek) Nation, was arrested for the following tribal charges: Possession of a Firearm After Former Conviction of a Felony, Aggravated Trafficking Fentanyl, and Possession of Marijuana. This incident occurred within the boundaries of the Muscogee (Creek) Nation reservation.

14. C.R. was placed under arrest for local outstanding arrest warrants. During a search incident to arrest, officers located two baggies containing white powdery

5

substances, and an electronic scale in C.R.'s possession. The contents of one baggie field tested positive as cocaine. The cocaine weighed 6.23 grams. C.R. admitted that the other baggie contained fake cocaine. C.R. was arrested for possession of a controlled substance, in addition to her outstanding local warrants. The Tahoe was towed by Allied towing.

15. On October 1, 2024, Colbert posted bond for his tribal charges.

16. I reviewed of Colbert's criminal history and learned that he is a convicted felon and was previously convicted of two counts of Robbery with a Firearm and two Counts of Assault and Battery with a Dangerous Weapon in case number CF-2007-3019, Tulsa County, Oklahoma. The Tulsa County District Judge sentenced Colbert to 10 years in that case.

17. On October 23, 2024, Colbert was Indicted on four counts in the Northern District of Oklahoma regarding the incident on September 26, 2024, and the Court issued a warrant for Colbert's arrest. The case number is 24-CR-337-JFH.

18. On October 25, 2024, TPD Officers located Colbert driving the same silver 2012 Chevrolet Tahoe bearing Oklahoma license plate J2L78. At the time, Colbert had the active federal warrant for his arrest, Colbert was not wearing a seatbelt, and the vehicle had air fresheners hanging from the rearview mirror, obstructing the windshield. The windshield also had a large crack, spanning most of the windshield. The contacting officer was also aware that Colbert had prior drug trafficking charges. Officers conducted a traffic stop on the Tahoe at 11100 E. 31st Street, Tulsa,

Oklahoma. Colbert pulled into a nearby Walmart parking lot and stopped the Tahoe in a traffic lane. The contacting officer arrested Colbert on the active warrant.

19. The contacting officer also smelled the odor of burnt and fresh marijuana while at Tahoe, and found the following items inside the Tahoe: approximately 4.36 grams of a white crystal substance that field tested presumptive positive for methamphetamine 3.26 grams of a white rock substance that field tested presumptive positive fentanyl,16 pills that field tested presumptive for MDMA, two individual cellophane baggies with a combined weight of 1.03 grams of suspected cocaine, several plastic baggies, and working electronic digital scale from a container within the center console. On top of the center console officers recovered 11 grams of marijuana. The lab results for these substances are pending. Officers also seized a gray Celero 5G cell phone.

20. The contacting officer had personal knowledge that Antonio previously hid narcotics inside compartments in the Tahoe, such as under the center console and behind plastic moldings in natural and man-made voids.

21. The Devices are currently in the lawful possession of the Federal Bureau of Investigation (FBI), Tulsa Resident Agency. Each of the Devices were seized and maintained by TPD until November 8, 2024, when I retrieved all three Devices. The Devices remain in FBI custody since removal from TPD property.

22. The Devices are currently in storage at the FBI Tulsa Resident Agency, 8023 East 63rd Place, Tulsa, Oklahoma. In my training and experience, I know that the Devices been stored in a manner in which its contents are, to the extent material to

this investigation, in substantially the same state as they were when the Devices first came into the possession of the FBI.

## Technical Terms

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at

9

least four satellites, a computer connected to that antenna can
mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

d.  PDA: A personal digital assistant, or PDA, is a handheld electronic
device used for storing data (such as names, addresses, appointments or
notes) and utilizing computer programs. Some PDAs also function as
wireless communication devices and are used to access the Internet and
send and receive e-mail. PDAs usually include a memory card or other
removable storage media for storing data and a keyboard and/or touch
screen for entering data. Removable storage media include various
types of flash memory cards or miniature hard drives. This removable
storage media can store any digital data. Most PDAs run computer
software, giving them many of the same capabilities as personal
computers. For example, PDA users can work with word-processing
documents, spreadsheets, and presentations. PDAs may also include
global positioning system ("GPS") technology for determining the
location of the device.

e.  Tablet: A tablet is a mobile computer, typically larger than a phone yet
smaller than a notebook, that is primarily operated by touching the
screen. Tablets function as wireless communication devices and can be
used to access the Internet through cellular networks, 802.11 "wi-fi"
networks, or otherwise. Tablets typically contain programs called apps,

10

which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24. Based on my training, experience, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**Electronic Storage and Forensic Analysis**

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. I know that cellular telephones are often equipped with digital cameras and those phones possess the capability to transmit and/or store electronic images. I

11

know that in many cases, cellular telephones maintain photographs of illegal activities to include evidence of illegal drug trafficking. These photos are sometimes stored in their cellular phones and often are transmitted or sent from one electronic media device to another. I also know that cellular phones may also contain notes regarding potential illegal acts that are recorded by the subject who possesses the electronics. Furthermore, I know that text messages, emails are often used by two or more persons to communicate information regarding illegal activities, between principals and co-conspirators of those crimes.

27. I know that cellular telephones are utilized by the majority of individuals in the United States and have become a staple of communication between individuals using text messaging, visual and audible communications (telephone calls and FaceTime type communications). Additionally, individuals utilize their cellular devices to take pictures, keep notes, as a GPS (global positioning System) device, and even to conduct illicit or illegal activity. Communications on phones are kept for long periods and transferred from one phone to another when replaced. This is done through the use of Cloud storage and direct transfer conducted at the time of purchase or by the individual themselves. Individuals utilize this method as not to lose data that is stored on the phone such as contacts, photos, notes, and other important information to the individual. This data includes contacts used to conduct illegal activities to include drug trafficking.

28. Based on my education, training, and experience, I know that individuals involved in the use, sales, manufacturing, and transportation of illegal narcotics often

use cell phones and other electronic devices to further their trade by conducting business on them via text messages and phone calls. I also know from my training, education, and experience that:

    a. Cellular telephones are almost always used by persons engaging in criminal activities as a means of communication. They will communicate by verbal conversations, digital text messaging, and/or sending photographs to one another.

    b. Drug distributors/traffickers commonly maintain books, records, receipts, notes, ledgers, and other documents/papers both electronically and in paper form, which relate to the transportation, ordering, sale, and distribution of controlled substances, even though such documents may be in code and/or identify customers/sources/co-conspirators through monikers/nicknames. Documentation such as this oftentimes results because drug distributors/traffickers commonly "front" drugs (provide controlled substances on consignment) to their clients and must account for these transactions in order to collect outstanding drug debts.

    c. Drug distributors/traffickers commonly maintain addresses or telephone numbers in notebooks, papers, cellular phones, computers and electronic storage media which reflect names, address, and/or telephone numbers for their associates in the drug distribution/trafficking organization, even if said items may be in code, and such traffickers send and receive items listed in this affidavit by mail and other common carriers.

13

d.  Persons engaged in criminal activities carry and possess firearms during and in relation to and in furtherance of crimes. They also photograph themselves and others with controlled substances, firearms, and money proceeds. Such photographs are often kept in digital form on cell phones.

e.  Cellular telephones may also contain notes, emails, and text messages

f.  Drug users, distributors and traffickers frequently take, or cause to be taken photographs or videotapes of themselves, their associates, their property/assets, and their product, and these individuals usually maintain these photographs or recordings/videos in the residences under their control. These photographs and videos are also often found in the individual's cellular telephone, computers and other electronic storage media.

g.  Cellular telephones are often used to facilitate offenses and allow criminals to maintain communication with each other before, during and after the commission of offenses. I am aware that cellular telephones have the capacity to store a vast amount of information, including but not limited to: telephone numbers, voice messages, text messages, e-mail, photographs, videos, address books, records, phone call histories, contact and other information. This information may be contained on the cellular telephone.

h.  Text messages and e-mails are often used by two or more persons to communicate information regarding illegal activities between two

14

telephones or between one telephone and a personal computer. This information can include directions for deliveries, stash locations, prices, cell phone contact numbers, and instructions.

i.  Cellular telephones often contain stored phone numbers and contact information of individuals that conduct business with other co-conspirators that possess the cellular telephone.

j.  When drug users/dealers/traffickers use text messages to discuss topics such as quantities, prices, and the quality of controlled dangerous substances, as well as dates, times and locations for drug transactions, these communications are often in coded drug talk/jargon and require review by peace officers experienced in deciphering such communications.

k.  In my experience in searching cellular telephones possessed by known drug users/distributors/traffickers, photos and/or videos have been discovered which evidence the use and distribution of controlled dangerous substances and the proceeds intended for or derived therefrom. This evidence often depicts pictures/videos of drugs for showing drug quality, condition or quantity. Moreover, users will commonly document episodes of drug use in social settings. Additionally, drug distributors will take pictures ("trophy" pictures) or otherwise capture digital recordings for the purpose of memorializing their credibility/capability as a drug dealer and accomplishments (acquisition of assets/large amounts of U.S. currency) relating thereto.

l.  In all phases of drug distribution, the utilization of cellular telephones is essential. Drug users/dealers/traffickers use cellular telephones to place calls, as well as communicate by SMS text messaging. As drug dealing necessarily entails constant communications with accomplices, co-conspirators, clients, and sources, these communications virtually always take place by voice calls and text messaging over cellular telephones.

m.  Cellular telephones are almost always used by drug distributors as a way to communicate. They will communicate by verbal conversations, digital text messaging, and/or sending photographs to one another. To avoid detection, drug distributors will oftentimes speak in coded language or through use of vague messages. Sometimes the cellular telephone numbers they use are listed in a different individual's name or they will frequently change phone numbers. Drug distributors will often "drop" or switch cellular phones to avoid detection by law enforcement. This will result in the accumulation of several different cellular phones.

n.  Persons prohibited from legally possessing firearms frequently do not obtain firearms by a traditional means (such as through licensed dealers which require background checks and paperwork/documentation) and instead use third-party firearms suppliers. Many of these third-party suppliers are online marketplaces such as Armslist (www.armslist.com) or Gun Broker (www.gunbroker.com), while other third-party transactions take place through the communication between two individuals in a

16

private sale transaction, which takes place outside of the restrictions of the federal government that would at minimum document the sale or transfer.

o. People who have previous felony convictions utilize many methods to obtain firearms. These methods include but are not limited to gun show purchase from private sellers, straw purchasers, stolen firearms, trading firearms for narcotics and stealing firearms. The use of cellular devices is a key way for these individuals to communicate in the movement of illegally obtained firearms. They utilize the devices to take pictures of firearms, discuss prices, brag about the firearms they have, and talk about the origin of the firearm (if it is stolen or has been involved in other crimes). They also use their phones to order firearms or communicate the type of firearm they would like someone to purchase for them when utilizing a straw purchaser. The phone's internet function can be used to look up firearms as well as dealers in the area that the straw purchaser can buy from, and to access third-party suppliers such as Armslist and Gun Broker. Information about the sale and purchase of firearms is communicated via messaging, which many times include pictures.

p. An additional avenue prohibited persons frequently use to obtain firearms is through the straw purchase of a firearm which is done when a non-prohibited person buys a firearm through traditional means for a prohibited person, at the direction of the non-prohibited person to include style, make, model, and caliber and sometimes even the individual to buy from.

17

Frequently, this communication between the non-prohibited and prohibited person takes place via cellular device to include text messages with both instructions for purchase and pictures of firearms to be obtained.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a

dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28. *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

29. *Methods of examination*. In conducting this examination, law enforcement personnel may use various methods to locate evidence and instrumentalities of the

19

crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the Device. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with stored cellular device data, such as pictures and videos, do not store as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant communications associated with a cellular device, as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications. Consequently, often many communications in cellular device data that are relevant to an investigation do not contain any searched keywords.

## Conclusion

30. Based on the information above, I submit that there is probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

31. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to

disclose those materials as necessary to comply with discovery and disclosure

obligations in any prosecutions from this matter.


Respectfully submitted,


Koby R. Knodle
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to by phone on November 14, 2024.


MARK T. STEELE
UNITED STATES MAGISTRATE JUDGE

21

## ATTACHMENT A

**The property to be searched consists of Device 1, Device 2, and Device 3 as described below:**

### Device 1

The property to be searched is a black and gold Motorola Razr cell phone, hereinafter the "Device 1." Device 1 is currently located at the FBI Tulsa Resident Agency, 8023 E 63rd Place, Tulsa, Oklahoma. Device 1 is pictured below.

This warrant authorizes the forensic examination of Device 1 for the purpose of identifying the electronically stored information described in Attachment B.



## Device 2

The property to be searched is a black Samsung cell phone, IMEI 355424985905092, hereinafter the "Device 2." Device 2 is currently located at the FBI Tulsa Resident Agency, 8023 E 63rd Place, Tulsa, Oklahoma. Device 2 is pictured below.

This warrant authorizes the forensic examination of Device 2 for the purpose of identifying the electronically stored information described in Attachment B.



**Device 3**

The property to be searched is a gray Celero 5G cell phone, hereinafter the "Device 3." Device 3 is currently located at the FBI Tulsa Resident Agency, 8023 E 63rd Place, Tulsa, Oklahoma. Device 3 is pictured below.

This warrant authorizes the forensic examination of Device 3 for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

### Particular Things to be Seized

All records on the Devices described in Attachment A that relate to the unlawful drug possession, distribution, and/or manufacturing in violation of Title 21, United States Code, Section 841 and  Title 18 U.S.C. § 922(g)(1), including:

1.  Records relating to communication with others as to the criminal offense(s) listed above; including incoming and outgoing voice messages; text messages; emails; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

2.  Records relating to documentation or memorialization of the criminal offense(s) listed above, including voice memos, photographs, videos, and other audio and video media, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos, including device information, geotagging information, and information about the creation date of the audio and video media;

3.  Records relating to the planning and execution of the criminal offense(s) above, including Internet activity, firewall logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user

entered into any Internet search engine, records of user-typed web addresses, account information, settings, and saved usage information;

4. Application data relating to the criminal offense(s) above;

5. Lists of customers and related identifying information;

6. Information related to co-conspirators, stash house locations used to store firearms or ammunition, admissions of criminal offense(s) related to the offense(s) listed above and information related to the acquisition or attempted acquisition of other firearms or ammunition in the future or already completed and related identifying information;

7. Any information related to sources of acquiring firearms, co-conspirators, aiders and abettors of information related to the illegal possession of firearms as well as others (including names, addresses, phone numbers, or any other identifying information); information relating to instructions for transportation, obtaining and storing illegally possessed firearms, and information relating to means of transportation for illegally possessed firearms;

8. All information, data, and photographs related to the possession, acquisition, and use of firearms or ammunition;

9. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

5

10. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

11. All bank records, checks, credit card bills, account information, and other financial records.

12. Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history;

13. All records and information related to the geolocation of the Device(s);

14. All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal statutes listed above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may

6

include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.